## HAMILTON et al. v. SAVANNAH, F. & W. RY. Co. et al.

(Circuit Court, S. D. Georgia, E. D. January 4, 1892.)

1. EQUITY—OMISSION OF PARTIES—PRESERVING JURISDICTION OF COURT—DECREE.
Notwithstanding Act Cong. 1839, (5 St. at Large, p. 321, § 1,) and rule 47 for the equity practice of the circuit courts, passed in pursuance thereof, relieving plaintiff in equity from the obligation of making persons in interest parties when the effect of their joinder would oust the court of jurisdiction, no decree can be made between the parties, before the court, involving the rights of such omitted party.

2. SAME—TRANSFER OF CORPORATE FRANCHISES—CANCELLATION—NECESSARY PARTIES.
Plaintiffs alleged that they were promoters of the E. G. & F. R. Co., organized for the construction of a railroad; that they entered into a contract with McC. & Co. for the construction of the road, by which the company's franchises, right of way, and improvements were conveyed to McC. & Co., who were to build the road, plaintiffs to receive in return certain stock and first mortgage bonds of the road, and a cash consideration; that McC. & Co., having obtained control of all the capital stock and property of the company, elected a board of directors, composed of themselves and others, and sold out the whole property to defendants, a competing company, without attempting to construct the road; that defendants took with full notice of plaintiffs' rights. The bill prayed that the transaction might be held void, and defendants declared trustees for plaintiffs, etc., but sought no affirmative relief against McC. & Co. Held, that McC. & Co. were not indispensable parties to the suit. Railway Co. v. Mills, 5 Sup. Ct. Rep. 456, 113 U. S. 256, distinguished.

3. PARALLEL RAILROADS—ILLEGAL PURCHASE BY COMPETING ROAD.
The purchase by defendants of the road in question, which was parallel to that of their own, was illegal and void, under Const. Ga. 1877, art. 4, § 2, par. 4, forbidding one corporation to make any contract with another tending to defeat or lessen competition in their respective businesses. Langdon v. Branch, 37 Fed. Rep. 449, reaffirmed.

4. RAILROAD COMPANIES—LEASE OR SALE OF FRANCHISE—VALIDITY.
A lease or sale of the corporate franchises of a railroad company to another corporation, by which it ceases to operate its lines, is an abandonment of its duty to the public, is ultra vires, and is absolutely null and void. Central Transp. Co. v. Pullman Palace Car Co., 11 Sup. Ct. Rep. 478, 139 U. S. 24, followed.

In Equity.
Charlton & Mackall, for plaintiffs.
Erwin, Du Bignon & Chisholm, for defendants.

SPEER, District Judge. Charles H. Hamilton, a citizen of New York, and William F. Bishop, a citizen of Connecticut, filed this bill against the Savannah, Florida & Western Railway Company, a corporation created under the laws of Georgia, and a citizen thereof, the East Georgia & Florida Railroad Company, also a corporation created under the laws of Georgia, and a citizen thereof, "and against William V. McCracken, George A. Evans, and Neil McDonald, who orators aver are citizens of the state of New York, and residents of the city of New York, in said state, copartners under the firm name and style of W. V. McCracken & Co." The complainants by their bill make the following case: They are copartners under the firm name of Hamilton & Bishop. The East Georgia & Florida Railroad Company was incorporated under the general laws of Georgia, for the purpose of constructing and operating a railroad from Buffalo to or near St. Mary's. The certificate of incorporation is attached to the bill, and it shows that L. M. Lawson, Samuel Thomas, and H. S. Terrell, of New York, and C. D. Willard, of Washington, D. C., were the incorporators. Afterwards the route was changed from the southern terminus northwardly, by the most direct and practicable line, through

the counties of Camden and Wayne, to Jessup, connecting at that point with the East Tennessee, Virginia & Georgia Railroad Company. The object of this company was to connect at St. Mary's with a system of railroads running to Jacksonville, and thence through Florida, and thus to supply railway facilities to a considerable portion of the state as yet without them. The Savannah, Florida & Western Railway Company owns and operates a line of railway from Savannah to Jacksonville by way of Waycross, which passes through Jessup. The East Georgia & Florida Railroad Company, when constructed, would become and be a competing line for business between Jessup and Jacksonville and other points. On December 22, 1885, by resolution of the directors of the East Georgia & Florida Railroad Company, its capital stock was fixed at $400,000, divided into 4,000 shares, of $100 each, such stock to be non-assessable and non-preferred, and the same remained so fixed during all the times hereinafter mentioned. By the same resolution it was declared that 51 per cent. of the stock should be issued to W. V. McCracken & Co., 30 per cent. to C. H. Hamilton, and 19 per cent. divided into seven equal parts, one each to Goodyear, Kay, Hamilton, Dill, Morse, and Cox, and half of a share each to J. T. Collins and M. M. Welch. By the same resolution it was declared that the various interests in lands, etc., of the incorporators at St. Mary's and elsewhere, should be distributed in substantially the same manner. Hamilton in all these matters was in fact acting as the representative of the firm of Hamilton & Bishop, who still are the real parties in interest. By virtue of said resolution, the complainants became the owners of, and entitled to, 1,200 shares of stock, and an undivided one-seventh of a right of way for a railroad occupying a portion of the territory to be covered by the railroad of the East Georgia & Florida Railroad Company, and all the improvements and work made and performed thereon, and an undivided one-seventh of the rights and franchises formerly belonging to the Great Southern Railway Company of Georgia, all of which were of great value. Complainants were promoters of the incorporation and organization of the East Georgia & Florida Railroad Company. They expended much time, money, and influence in the enterprise, with a view to realize a profit from the construction of the road. The Great Southern Railway Company was incorporated by act of the legislature of Georgia approved October 17, 1870, and was authorized to construct and operate a road from Millen, in as near a straight line as the topography of the country would permit, to the St. Mary's river, there to connect with the Great Southern Railway Company of Florida. On July 3, 1877, by decree of Wayne superior court, rendered in the case of Goodyear and Harris, for the use of the Southern Atlantic Telegraph Company, against the Great Southern Railway Company, the Great Southern Railway was sold by John F. King, receiver, to Willis Clary, property and franchises, who subsequently died, leaving Lucinda Clary, his widow and heir at law, as the owner of the assets of the Great Southern Railway Company. Lucinda Clary pooled her interests with the interests of complainants and their associates, as promoters of the East Georgia & Florida Railroad Company,

in the proportions hereinafter set out. Under a resolution of the directors of the East Georgia & Florida Railroad Company, said company made a contract with W. V. McCracken & Co. for building a line from Jessup to Hart's Road. This contract bears date December 22, 1885, and is attached to the bill as Exhibit B. On or about April 20, 1886, the promoters of the East Georgia & Florida Railroad Company, looking to the construction of said road, entered into a written contract with and conveyance to W. V. McCracken & Co., wherein it is recited that McCracken & Co. have entered into a contract with the East Georgia & Florida Railroad Company, a corporation duly organized under the laws of Georgia and Florida, and authorized to construct and operate a railroad to extend from Millen, Ga., to Hart's Road, Fla., by which McCracken & Co. have undertaken, in consideration of the compensation in said contract provided, to furnish the right of way, and all material necessary for, and to construct and build, the said railroad; that the parties of the first part thereto (the promoters) are severally the owners of certain interests in a right of way for a railroad occupying a portion of the territory to be covered by the railroad of the East Georgia & Florida Railroad Company, and certain grading and other work done and materials furnished for a railroad over said right of way, and also of certain grants of land and concessions, and also are, or claim to be, the owners of certain rights and franchises formerly belonging to the Great Southern Railroad Company of Georgia, which were sold and conveyed to Willis Clary; and under and by said contract and conveyance the said parties of the first part thereto sold, granted, and assigned unto McCracken & Co., and their assigns, all the right, title, and interest of the said parties of the first part, and each of them, in and to the right of way aforesaid, and all the improvements and work made and performed thereon, and of, in, and to all the aforesaid franchises, rights, and privileges, and also an equal, undivided half part of, in, and to all the aforesaid grants and concessions; and the said parties of the first part did thereby covenant and agree, at their own cost and expense, to secure for and transfer to said McCracken & Co. a full and complete right of way for the said railroad over the whole of the proposed route between Hart's Road and Jessup. The consideration moving to the parties of the first part for this contract and conveyance is therein stated to be certain stock and first mortgage bonds of the East Georgia & Florida Railroad Company, and certain sums of money payable in the manner set out in the said contract and conveyance. The consideration moving to Hamilton is stated to be 100 shares of stock of the East Georgia & Florida Railroad Company, and $3,000 in cash, payable October 1, 1886. The bill further avers that the complainants' interests in said properties, on April 20, 1886, were 1,200 shares of the stock of the East Georgia & Florida Railroad Company, one-seventh part of the said right of way and improvements, and of said rights and franchises, and one-fourteenth of the grants and concessions. That Hamilton, acting for the complainants, was to get from McCracken & Co., as a consideration for signing this contract and conveyance, $3,000 in cash, payable on October 1, 1886, and 1,100 shares of stock upon completion

of the road, and as soon as said shares should be delivered to McCracken & Co., or as soon as their right to receive such shares should accrue; and that in the mean time the said McCracken & Co. would hold the same as trustees for said Hamilton. A copy of the aforesaid contract and conveyance is attached to the bill as Exhibit C. At the time said contract and conveyance were made, McCracken & Co. did not mean to build the road, but intended to sell out to the Savannah, Florida & Western Railway Company, or other parties, at a profit, without regard to complainants' rights. That, by means of said sale and conveyance, Mc-Cracken & Co. obtained control of all the capital stock and property aforesaid, and elected a board of directors composed of themselves or persons representing their interests, to the exclusion of all other interests, and continued in sole control of the corporation, through all the transactions hereinafter set out. That without completing the road or their contract with Hamilton, and without his authority, McCracken & Co. sold and transferred the East Georgia & Florida Railroad, with all of its property and franchises, or attempted so to do, to the Savannah, Florida & Western Railway Company. At the time of said sale the Savannah, Florida & Western Railway Company not only had full notice and knowledge of the contract between McCracken & Co. and the East Georgia & Florida Railroad Company, but also of complainants' rights and interests therein. Before the Savannah, Florida & Western Railway Company paid the consideration for said sale to McCracken & Co., it again received notice of complainants' rights. Said sale and conveyance was contrary to paragraph 4, § 2, art. 4, of the constitution of Georgia, as being a contract or agreement intended to have the effect of defeating or lessening competition and encouraging monopoly, "and the said contract is therefore void, and should be so declared by this court." The Savannah, Florida & Western Railway Company, since buying the property, has made no attempt to build the road, but has abandoned the enterprise. The East Georgia & Florida Railroad Company is insolvent. Its franchises and property were rendered almost valueless by the acts of McCracken & Co. and the Savannah, Florida & Western Railway Company. In equity and good conscience, the Savannah, Florida & Western Railway Company should have assumed and carried out the obligations of the East Georgia & Florida Railroad Company and of McCracken & Co. with complainants. Complainants have requested the Savannah, Florida & Western Railway Company to account to them for the value of their rights and interests in the East Georgia & Florida Railroad Company, but said Savannah, Florida & Western Railway Company refuses. The said contract and conveyance of April 20, 1886, is absolutely void, because of fraud and want of consideration, and the same cannot, in equity, be considered as binding in any shape or form upon complainants. The Savannah, Florida & Western Railway Company, notwithstanding the notice it received of complainants' rights, has paid McCracken & Co. a large sum of money, and has taken an indemnity bond from McCracken & Co. to protect it against the claims of complainants. The road along the line of the East Georgia & Florida Railroad Company is considered

by business and railroad people a practicable and reasonable project, and there are capitalists ready to build the road if the same can be legally accomplished. Complainants have an equitable claim to 1,200 shares of said stock, an undivided one-seventh interest in the rights of way, improvements, and franchises aforesaid, and an undivided one-fourteenth interest in the grants and concessions aforesaid.

Such are the averments of the bill. The relief prayed is as follows: (1) That the attempted sale made by McCracken & Co. to the Savannah, Florida & Western Railway Company may be decreed to be void and of none effect, as being in violation of the constitution of Georgia, and that the Savannah, Florida & Western Railway Company may be declared to be a trustee for complainants, and such other persons as may be equitably entitled thereto, of all the property, assets, and franchises of the East Georgia & Florida Railroad Company. (2) An injunction to restrain the Savannah, Florida & Western Railway Company from further destruction of the property. (3) The appointment of a receiver to take charge of the property, assets, and franchises of the East Georgia & Florida Railroad Company, and to manage and control the same subject to the further order of the court. (4) That the Savannah, Florida & Western Railway Company may be compelled to account to a receiver for the value of the property of the East Georgia & Florida Railroad Company destroyed by it. (5) That the rights and claims of complainants in and to the East Georgia & Florida Railroad Company may be protected and established by the decree of this court, and that the Savannah, Florida & Western Railway Company may be decreed to respond to complainants for such damages as may be shown to have resulted to them by reason of its illegal and unwarranted acts in the premises. (6) Discovery. (7) The usual prayer for further and other relief. (8) Subpœna is prayed against the East Georgia & Florida Railroad Company, the Savannah, Florida & Western Railway Company, and also against the members composing the firm of McCracken & Co., provided they, or either of them, should come within the jurisdiction of this court, and they should appear to the court to be necessary and proper parties to the bill.

This cause is pending upon an application for an injunction and the appointment of a receiver *pendente lite* for the purposes described in the foregoing statement. The grounds of defense the defendants present by answer are—*First*, that under the allegations of the bill this court, for the want of proper parties, has no jurisdiction in the premises; *second*, that it appears from the bill that there are no grounds for interference by a court of equity; *third*, that upon the proofs the merits of the case are with the respondents.

The questions thus presented will be considered in the order in which they are stated.

It is insisted for the respondents that McCracken & Co. are necessary parties to the bill, and inasmuch as Hamilton, one of the complainants, and McCracken & Co. are citizens of the same state, the court here has no jurisdiction to proceed with this suit. Equity rule 47 provides that—

"In all cases where it shall appear to the court that persons who might otherwise be deemed necessary or proper parties to the suit cannot be made parties by reason of their being out of the jurisdiction of the court, or incapable otherwise of being made parties, or because their joinder would oust the jurisdiction of the court as to the parties before the court, the court may, in their discretion, proceed in the cause without making such persons parties; and in such cases the decree shall be without prejudice to the rights of the absent parties."

Respondents insist that McCracken & Co. are indispensable parties, because the prayers of the bill are to declare as void the sale made by them of the East Georgia & Florida Railroad to the Savannah, Florida & Western Railroad; that the Savannah, Florida & Western Railway Company may be declared a trustee for the complainants, and such others as may be entitled; that, if the sale is set aside and declared void, the title to the property will be in McCracken & Co.; that to appoint a receiver for the property the title to which is in McCracken & Co. would be to deprive them of their property without due process of law,—without giving them an opportunity of being heard, if they desire voluntarily to come to this court for relief,—for, as McCracken & Co. and Hamilton are citizens of the same state, this court can under no circumstances hear any controversy between them. The defendants cite and rely upon the case of *Shields* v. *Barrow*, 17 How. 146. That case was argued by Mr. Judah P. Benjamin for the appellants, and by Mr. Janin for the appellee, and Mr. Justice Curtis delivered the opinion of the court. The vendor had sold an estate in Louisiana for a large sum of money, and received payment from time to time for nearly one-half the amount. Afterwards he agreed to take back the property upon the payment of an additional sum of money which was secured to him by the promissory note of six individuals, four of whom lived in Louisiana and two in Mississippi. Becoming dissatisfied with this arrangement, he filed his bill in the circuit court of the United States against the two citizens of Mississippi to set aside the agreement as having been improperly procured, and to restore him to his rights under the original sale. The four parties to the compromise who resided in Louisiana not being suable in the circuit court of that state, and their presence as defendants being necessary, it was held that the court could not rescind the contract as to two, and allow it to stand as to the other four. Consequently it could not pass a decree as prayed. The court held that neither the act of congress of 1839, (5 St. at Large, p. 321, § 1,) nor the forty-seventh rule for the equity practice of the circuit court, above quoted, enables a circuit court to make a decree in equity, in the absence of an indispensable party whose rights must necessarily be affected by such decree. The court go on to say:

"Such being the scope of this bill and its parties, it is perfectly clear that the circuit court of the United States for Louisiana could not make any decree thereon. The contract of compromise was one entire subject, and from its nature could not be rescinded, so far as respected two parties to it, and allowed to stand as to the others. Thomas R. Shields, the principal, and four out of six of his indorsers, being citizens of Louisiana, could not be made de-

fendants in this suit, yet each of them was an indispensable party to a bill for the rescission of the contract. In *Russel* v. *Clark's Ex'rs*, 7 Cranch, 78, this court said: 'The incapacity imposed on the circuit court to proceed against any person residing within the United States, but not within the district for which the court may be holden, would certainly justify them in dispensing with parties merely formal; but in this case all the parties are essential to the merits of the action.' "

The court proceeds to point out three classes of parties to a bill in equity. They are: (1) Formal parties. (2) Persons having an interest in the controversy, and who ought to be made parties, in order that the court may act on that rule which requires it to decide on and finally determine the entire controversy, and do complete justice by adjusting all the rights involved in it. These persons are commonly termed "necessary parties," but, if their interests are separable from those parties before the court, so that the court can proceed to a decree and do complete and final justice without affecting other persons not before the court, the latter are not indispensable parties. (3) Persons who have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience. The court adds:

"On February 28, 1839, the act of congress was passed upon this subject, and this court adopted the forty-seventh equity rule. That is still of force. It provides that, in all cases where it shall appear to the court that persons who might otherwise be deemed necessary or proper parties to the suit cannot be made parties by reason of their being out of the jurisdiction of the court, or incapable otherwise of being made parties, or because their joinder would oust the jurisdiction of the court as to the parties before the court, the court may, in their discretion, proceed in the cause without making such persons parties, and in such cases a decree shall be without prejudice to the rights of the absent parties. This act relates solely to the non-joinders of parties who are not within reach of the process of the court. This court had already decided that the non-joinder of a party who could not be served with process would not defeat the jurisdiction."

It remains true, then, that, notwithstanding the act of congress and the forty-seventh equity rule, a circuit court can make no decree affecting the rights of an absent person, and can make no decree between the parties before it which so far involves or depends upon the rights of an absent person that complete and final justice cannot be done between the parties to the suit without affecting those rights. To use the language of this court in *Elmendorf* v. *Taylor*, 10 Wheat. 117:

"If the case may be completely decided as between the litigant parties, the circumstance that an interest exists in some other person whom the process of the court cannot reach, as if such a party be a resident of another state, ought not to prevent a decree upon its merits; but, if the case cannot be thus completely decided, the court should make no decree."

In the last case above referred to Mr. Justice MARSHALL, delivering the opinion of the court, uses the following language:

"*Second.* It is contended that he [the plaintiff] is a tenant in common with the others, and ought not to be permitted to sue in equity without making his co-tenants parties to the suit. This objection does not affect the jurisdiction, but addresses itself to the policy of the court. Courts of equity require that all the parties concerned in interest shall be brought before them, that the matter in controversy may be finally settled. This equitable rule, however, is framed by the court itself, and is subject to its discretion. It is not like the discretion of parties,—an inflexible rule, a failure to observe which turns the party out of court because it has no jurisdiction over his cause,—but, being introduced by the court itself for the purposes of justice, is susceptible of modification for the promotion of those purposes. In this case the persons who are alleged to be tenants in common with the plaintiffs appear to be entitled to a fourth part, not of the whole contract, but of a specially described portion of it, which may or may not interfere with the part occupied by the defendant. Neither the bill nor the answer alleges such an interference, and the court ought not, without such allegation, to presume it."

In *Payne* v. *Hook*, 7 Wall. 425, it was held that, in a bill in equity in the circuit court by one distributee of an intestate's estate against an administrator, it is not indispensable that such distributee make the other distributees parties, if the court is able to proceed to a decree and to do justice to the parties before it without injury to absent parties equally interested. After stating the general rule, which is that all persons materially interested in the subject-matter of the suit should be made parties to the suit, the court proceeds:

"But this rule, like all general rules, being founded in convenience, will yield whenever it is necessary that it should yield in order to accomplish the ends of justice. It will yield if the court is able to proceed to a decree and do justice to the parties before it without injury to absent persons equally interested in the litigation, but who cannot conveniently be made parties to the suit." Citing *West* v. *Randall*, 2 Mason, 181; Story, Eq. Pl. § 89 et seq.

The necessity for the relaxation of the rule is more specially apparent in the courts of the United States, where oftentimes the enforcement of the rule would oust them of their jurisdiction, and deprive parties entitled to the interposition of a court of equity of any remedy whatever. The present case would seem to afford an ample illustration of this necessity. The bill itself is drafted upon the theory that McCracken & Co. are not necessary parties. No subpœna is prayed against them. There is, however, a prayer that, if the court should deem them to be necessary parties for any purpose in such case, an order might be passed to that end, under section 8 of the act of March 3, 1887. The *gravamen* of the bill is the recaption of certain railroad stock alleged to belong to the plaintiffs, which it is alleged is held by the Savannah, Florida & Western Railway Company. The bill further seeks to establish an equitable lien upon the right of way of the East Georgia & Florida Railroad Company, also within the southern district of Georgia. It is alleged that the transfer of this property, to-wit, the franchise and assets, to its present custody was tortious as to the plaintiffs, and absolutely void, because a distinct violation of the organic law of the state. If this be true, may not the parties at interest proceed directly against the person or corporation holding their property without making any intermediate wrong-

doer a party to the proceeding?    If the conveyance from McCracken &
Co. to the Savannah, Florida & Western Railway Company is absolutely
void and unconstitutional, the latter could acquire no title, for title does
not pass under a void contract.    If it be true, as alleged, that Hamilton
conveyed to McCracken & Co. his interest in the East Georgia & Florida
Railroad to enable the latter to build a railroad, and if instead of build-
ing the railroad its entire franchise and all its holdings were conveyed
by a void contract to another corporation, it is optional with Hamilton
to proceed against McCracken & Co. for the breach of their undertak-
ing, or to pursue and attempt the recaption of the property itself.    Code
Ga. § 2333.    This is especially true where the taker from McCracken & Co.
had notice of the nature of the obligation they were under to Hamilton and
his associates, as is alleged here.    Here the proceeding is to declare a
trust upon the property within the district, with a prayer that all oth-
ers who have an interest in it may come in and be made parties; and,
if it be true that McCracken & Co. have interests which should be pro-
tected by the court, it would seem that they might come in as parties
complainant, or by intervention, and protect themselves, and at the same
time not oust the jurisdiction of the court.    *Brown* v. *Steam-Ship Co.*, 5
Blatchf. 526.    In *Ribon* v. *Railroad Co.*, 16 Wall. 450, also cited by de-
fendant, the sale sought to be rescinded was not void, but merely void-
able.    As it was a sale under a decree foreclosing mortgages, it was man-
ifestly true that the trustees in the mortgages were indispensable parties.
In the case of *Coiron* v. *Millaudon*, 19 How. 113, cited also, the bill at-
tempted to set aside the sale of mortgaged property on the ground of ir-
regularity simply, and the mortgagees were held indispensable parties.
The court, on page 115, uses, however, this significant language:

  "A court of equity, in setting aside a deed of a purchaser upon grounds
other than positive fraud on his part, sets it aside upon terms, and requires
a return of the purchase money, or that the conveyance stand as a security for
its payment.    *Boyd* v. *Dunlap*, 1 Johns. Ch. 478; *Sands* v. *Codwise*, 4 Johns.
536, 598, 599.    This constitutes the essential difference between relief in eq-
uity and that afforded in a court of law.    A court of law can hold no middle
course.    The entire claim of each party must rest and be determined at law,
on the single point of the validity of the deed; but it is the ordinary case in
the former court that a deed not absolutely void, yet, under the circum-
stances, inequitable as between the parties, may be set aside upon terms."

Of course, all the parties to the deed merely voidable would be enti-
tled to receive the benefit of such terms as the court ought to make in
the order of rescission, but the supreme court would seem to imply that,
where the deed is absolutely void, no terms will be considered; therefore
such parties would not be necessary.    In the case of *Railway Co.* v. *Wil-
son*, 114 U. S. 62, 5 Sup. Ct. Rep. 738, it was held that, to compel a
corporation to transfer to the plaintiff stock standing on its books in the
name of a third person, the corporation is a necessary party.    There the
principal relief was against the railroad company, and the case would be
pertinent if the plaintiffs had filed their bill against McCracken & Co.,
and had omitted the Savannah, Florida & Western Railway.    The
case of *Railway Co.* v. *Mills*, 113 U. S. 256, 5 Sup. Ct. Rep. 456, is the

strongest authority we have been able to find for the defendant's propo-
sition. There a suit was filed by citizens of New Jersey in a New Jersey
court against a New Jersey corporation, and citizens of New Jersey, and
a Pennsylvania corporation. The proceeding was to set aside a lease
made by that corporation, the New Jersey railroad company, of its rail-
road and property, in excess of its corporate powers, and in fraud of the
rights of the plaintiffs. All the defendants, including the New Jersey
corporation, united in defending the acts complained of, and denying
the illegal and other charges against them. The court held, on a mo-
tion to remand the cause after its removal to the circuit court, that the
New Jersey corporation was in no sense a mere formal party to the
suit, or a party in the same interest with the plaintiffs, but was
necessarily made a defendant. "The bill seeks affirmative relief," con-
tinued the learned justice who rendered the opinion, "against the di-
rectors as well as against the two corporations, for one and the same ille-
gal and fraudulent act. The single matter in controversy between the
plaintiffs and all the defendants is the validity of that act, and, unless it
is determined that the action of the New Jersey corporation was invalid
as against the plaintiffs, there can be nó decree against any of the other
defendants."

It cannot be denied that this is exceedingly like the case at bar;
and, if it may not be distinguished therefrom, it is controlling. Upon
careful consideration, it seems, however, to be distinguishable. There
the defendants, who were the railroad companies and many other citi-
zens of New Jersey, had been sued in the New Jersey courts upon a sub-
ject-matter of which these courts had jurisdiction concurrent with the
circuit court of the United States. They were before a court, therefore,
with competent power to decide all the questions in controversy; and
there could be no failure of justice because a party having a substantial
interest was out of the jurisdiction. It may well be doubted, however,
if the suit had been brought by the stockholders of the New Jersey
corporation who were residents of Pennsylvania, in the circuit court of
the United States for New Jersey, whether that court would have denied
the plaintiffs a hearing because they had failed to make the Pennsyl-
vania corporation a party, when to have done so would have defeated
the jurisdiction of the United States circuit court for New Jersey. Be-
sides, this bill seeks no affirmative relief against McCracken & Co.; and
while they would be proper parties, and perhaps ought to be parties,
before all the matters which may arise in the controversy can be ad-
judicated, yet it does not seem that they are such indispensable parties
as, upon consideration of the authorities, will oust the jurisdiction and
deny to the plaintiffs a hearing in the forum which they have sought.
In the case of *Railroad Co.* v. *Mills, supra,* the question arose on motion
to remand, and the court was not in the position to exercise that dis-
cretion in the furtherance of justice to which Chief Justice MARSHALL ad-
verted in the case of *Elmendorf* v. *Taylor,* 10 Wheat. 117. On the other
hand, this would seem to be a case in which there is a proper occasion,

in the felicitous language of the late Justice MILLER, "for the exercise of the beneficent powers and flexible methods of courts of equity."

It remains to be determined whether the transfer of the East Georgia & Florida Railroad to the Savannah, Florida & Western Railway Company by McCracken & Co. is void because in violation of the constitution of the state of Georgia. The statement of this question cannot readily be made in more appropriate language than that used in his brief by the learned counsel for the plaintiffs, Mr. Walter G. Charlton:

"(a) The language of paragraph 4, § 2, art. 4, of the constitution of 1877, is as follows: 'The general assembly shall have no power to authorize any corporation to buy shares or stock in any other corporation in this state or elsewhere, or to make any contract or agreement whatever with any such corporation which may have the effect, or be intended to have the effect, to defeat or lessen competition in their respective businesses, or to encourage monopoly; and all such contracts and agreements shall be illegal and void.' Analyzing this section, we have the following: (1) The general assembly shall have no power to authorize any corporation to buy shares or stock in any other corporation in this state or elsewhere which may have the effect, or be intended to have the effect, to defeat or lessen competition in their respective businesses. (2) The general assembly shall have no power to authorize any corporation to buy shares or stock in other corporations, in this state or elsewhere, which may have the effect, or be intended to have the effect, to encourage monopoly. (3) The general assembly shall have no power to authorize any corporation to make any contract or agreement whatever with any such corporation which may have the effect, or be intended to have the effect, to defeat or lessen competition in their respective businesses. (4) The general assembly shall have no power to authorize any corporation to make any contract or agreement which may have the effect, or be intended to have the effect, to encourage monopoly. The foregoing constitute four distinct inhibitions upon the power of the general assembly, and it goes without saying that any attempt of the legislature to legalize either or all of these forbidden acts would be *ultra vires* and void. Then comes: (5) And 'all such contracts and agreements shall be illegal and void.' What contracts or agreements? Clearly, the contracts or agreements of corporations which have the effect, or are intended to have the effect, to defeat or lessen competition or to encourage monopoly. In others words, the constitution, after specifying the four things which the legislature shall not do, then declares what acts of the corporations themselves shall be void. 'Contracts and agreements' must refer to transactions of corporations, and not to acts of the legislature. If, then, the contract or agreement by which the Savannah, Florida & Western Railway Company obtained possession of the properties and franchises of the East Georgia & Florida Railroad Company is obnoxious to any or all of the aforesaid inhibitions, such contract or agreement must perforce be void, and, under the decision in the *Langdon Case*, a court of equity will interfere to protect the property for the benefit of those entitled to it."

The learned counsel refers, in the last sentence quoted, to the case of *Langdon v. Branch*, decided by this court November 20, 1888, and reported in 37 Fed. Rep. 449–465, a case based upon facts similar in many respects to those in the case at bar as they now appear, and involving the application of the clause of the constitution of the state above quoted. In the decision with reference to that clause the court used the following language:

"This is the action of the sovereign people of Georgia in convention assembled. They chartered the Central Railroad & Banking Company. They chartered the Savannah, Dublin & Western Short-Line Railway Company. They granted to these railways vast, valuable, and perpetual franchises. With these rights thus granted, no power can interfere. They are perpetual; they are indefeasible. But with these rights are carried all the deterring and prohibitory effects of the constitutional inhibition just quoted, by which the people seek to defeat the aggregations of monopoly, and prevent the coporations which they permit to exist from aggrandizement of power, to the injury or destruction of public and private rights. The court has no official concern in the policy of this law. It is too plain and significant for intelligent controversy. Whatever may be the rules upon similar topics prescribed in other states, the people of Georgia, with full power to act, with undeniable jurisdiction over the important parties here, have embodied in their fundamental law this comprehensive and vital clause, clearly intended to accomplish what they deemed the salutary and healthful result of competing lines for railway transportation. Contracts in violation of this clause are not permitted. When attempted, they are utterly void. They have no binding force. They are nullities, and are to be disregarded and ignored whenever it concerns a party at interest to do so. Now, what may not be done directly may not be done by indirection. The Central Railroad & Banking Company could not purchase the control of a railroad running parallel with its line from the same terminal points. Such a contract would be absolutely void, and being void, and an absolute nullity, no title would pass under it."

The decision was not appealed, notwithstanding the large interest involved, and is believed to contain a definite and valid exposition of the law, as declared by the constitution. Of course, by the language used the court did not mean to intimate that private parties could by their personal action ignore or disregard contracts void under this statute, but that courts in proper cases would hold them void. The construction placed upon this clause by the learned counsel for the plaintiffs here appears to be unanswerable. After declaring that the general assembly shall have no power to authorize any corporation to buy shares of stock in any other corporation, or to make any contract which may have the effect, or be intended to have the effect, to defeat or lessen competition in their respective businesses, or encourage monopoly, and then declaring that all such contracts and agreements shall be illegal and void, it may not be supposed that the constitutional convention presumed that the legislature would authorize contracts which the constitution inhibited. So far as legislative impotency upon the subject is involved, it was sufficiently declared by the words of the clause: "The general assembly shall have no power to authorize," etc. The meaning of the last paragraph of the clause is therefore clearly that contracts and agreements between corporations to buy shares or stock in another corporation in this state, and contracts and agreements which may tend to defeat or lessen competition in the business of said corporations, or which may have the effect or tend to encourage monopoly, are illegal and void. If it be true, however, that the clause of the constitution is intended to declare merely that legislative action authorizing contracts of this injurious tendency is invalid and void, *a fortiori* would it be true that such contracts by corporations, which are the creatures of the legislature, when made

without legislative authority, will be void, and they would be held by the courts of the country as invalid and void. The clause of the constitution in question is self-operative, and needs no legislation to enforce it. The import of the clause may also be regarded as prohibiting the legislature from changing the common law upon this subject. It has long been true that, before one corporation can acquire the stock of another corporation, there must be express authority given for it by the state. At common law there was no such power. *Railroad* v. *Collins*, 40 Ga. 582; *Railroad Co.* v. *Wood*, 7 South. Rep. 108, (Sup. Ct. Ala. Nov. term, 1889, opinion of Chief Justice STONE;) Cook, Stocks, §§ 667–672. It does not appear that any statutory authority was given to the Savannah, Florida & Western Railway Company to buy stock in any other corporation. In fact, its charter was not granted until after the adoption of the constitution of 1877, from which the inhibitory clause is taken.

Since the argument of this cause the supreme court of the United States, after an elaborate and careful review of the leading cases upon the general subject, has rendered a decision confirming in all material respects the decisions in *Railroad* v. *Collins* and *Landon* v. *Branch*, *supra*. We refer to the cases of *Central Transp. Co.* v. *Pullman Car Co.*, 139 U. S. 24–61, 11 Sup. Ct. Rep. 478, (decided the 2d day of March, 1891.) Decision by Mr. Justice GRAY for the entire court, except Mr. Justice BROWN, who, not having been a member of the court when the case was argued, took no part in the decision. Of this important case, its copious, careful citation and analysis of the authorities, and deduction of salutary principles therefrom, without making the superfluous attempt to apply the doctrine there settled, it will suffice to say it announces that where a corporation, although empowered by its charter to enter into contracts with other corporations of any state, for the leasing or hiring and transfer to them, or any of them, its railway cars and other personal property, transfers to any corporation all its cars, railroad tracks, patent-rights, and other personal properties and rights of action for a term of 99 years, and covenants it not to engage in the business for which it was chartered while the indenture should remain of force, the contract was unlawful and void, because beyond the corporate powers of the lessor, and involving an abandonment of his duty to the public; and therefore no action could be maintained by the lessor upon the contract, or to recover the sums thereby payable, notwithstanding the fact that the lessee had enjoyed the benefits of the contract. The learned justice sums up the decision in the language following:

"A contract of a corporation which is *ultra vires*, in the proper sense,— that is to say, outside the object of its creation as defined in the law of its organization, and therefore beyond the powers conferred upon it by the legislature,—is not voidable only, but wholly void, and of no legal effect. The objection to the contract is not merely that the corporation ought not to have made it, but that it could not make it. The contract cannot be ratified by either party, because it could not have been authorized by either. No performance on either side can give the unlawful contract any validity, or be the foundation of any right of action upon it. When a corporation is acting within the general scope of the powers conferred upon it by the legislature,

the corporation, as well as persons contracting with it, may be estopped to deny that it has complied with the legal formalities which are prerequisites to its existence or to its action, because such requisites might in fact have been complied with. But when the contract is beyond the powers conferred upon it by existing laws, neither the corporation, nor the other party to the contract, can be estopped, by assenting to it, or by acting upon it, to show that it was prohibited by those laws."

As to the right of the Savannah, Florida & Western Railway to recover the money paid McCracken & Co., the following remarks of the learned justice seem important:

"A contract *ultra vires* being unlawful and void, not because it is in itself immoral, but because the corporation, by the law of its creation, is incapable of making it, the courts, while refusing to maintain any action upon the unlawful contract, have always striven to do justice between the parties, so far as could be done consistently with adherence to law, by permitting property or money, parted with on the faith of the unlawful contract, to be recovered back, or compensation to be made for it. In such case, however, the action is not maintained upon the unlawful contracts, nor according to its terms, but on an implied contract of the defendant to return, or, failing to do that, to make compensation for, property or money which it has no right to retain. To maintain such an action is not to affirm, but to disaffirm, the unlawful contract."

The ground and the limits of the rule concerning the remedy, in the case of a contract *ultra vires*, which has been partly performed, and under which property has passed, can hardly be summed up better than they were by Mr. Justice MILLER in a passage already quoted, where he said that the rule "stands upon the broad ground that the contract itself is void, and that nothing which has been done under it, nor the action of the court, can infuse any vitality into it;" and that, "where the parties have so far acted under such a contract that they cannot be restored to their original condition, the court inquires if relief can be given independently of the contract, or whether it will refuse to interfere as the matter stands." *Pennsylvania R. Co.* v. *St. Louis, A. & T. H. R. Co.*, 118 U. S. 317, 6 Sup. Ct. Rep. 1094. This case would control the action of the court, even in the absence of the constitutional inhibition, as construed in *Landon* v. *Branch.*

With reference to the merits of the controversy, it will be sufficient to say that it appears, as we are now informed, that the East Georgia & Florida Railroad Company and the Savannah, Florida & Western Railway Company are "competitive," in the sense in which the term is used in the clause of the constitution of Georgia above referred to. It further appears that, if the Savannah, Florida & Western Railway Company were permitted to control or suppress the East Georgia & Florida Railroad, it will have a monopoly of railway transportation for goods and passengers in all that section of the state from Jessup to the Florida line. It is not denied that the entire franchises and assets of the East Georgia & Florida Railroad Company are now controlled by means of the sale from McCracken & Co. to the Savannah, Florida & Western Railway Company. The interest of the complainants here is their claim to 1,200 shares of stock of the East Georgia & Florida Railroad, and

one-seventh of the "right of way." Sufficient appears to give the plaintiffs a standing in court, at least for the purposes of litigating their rights and taking evidence, to show, if they can, that they are meritorious. All of these facts, of course, are made apparent merely by affidavits, or by the undisputed or conceded facts in the pleadings. After thorough ir-estigation attainable by the usual progress of a suit in equity, a different appearance may be given to the case. As we are advised, however, at present, we feel obliged to grant the injunction prayed for, and appoint a receiver *pendente lite*, in accordance with the prayers of the bill. An order will be taken accordingly.